[Nos. 14499-5-I; 14608-4-I. Division One. December 30, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. EMILIO CRESPO ARANGUREN, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. EMILIO CRESPO ARANGUREN, *Defendant,* GUILLERMO DUQUESNE–VALERA, *Appellant.*

*Mark W. Muenster* of *Washington Appellate Defender Association,* for appellants.

*David S. McEachran, Prosecuting Attorney,* and *Karen L. Nelson, Deputy,* for respondent.

COLEMAN, J.—Emilio Crespo Aranguren and Guillermo Duquesne–Valera appeal their convictions for possession of stolen property in the third degree. Their cases, tried separately at the trial court level, have been consolidated on appeal. Both appellants argue that the trial court erred in denying the motion to suppress evidence that was obtained from an allegedly illegal investigatory stop.

On January 8, 1984, at approximately 7 p.m., Officer Gill of the Bellingham Police Department was patrolling by car when he received a report of vandalism. Officer Gill testified that "the call was of three people doing vandalism in the 1200 block of West Holly and they may have described the three people involved as being of Indian descent or

Indians." At the time of the report, Officer Gill was approximately 6 blocks away from the reported vandalism. About 10 to 15 seconds after the report, Officer Gill heard "commotion or loud talking" coming from a nearby parking lot. He saw two people on bicycles ride out from the parking lot. The officer pulled in behind them because, he said, "I felt, basically, being about four blocks from the area of the reported vandalism that they may possibly have come from that area or have known something about it." When asked, "how did you signal to them?", he replied, "I pulled over and got out of the car and said can I talk to you guys for a minute." Officer Gill further testified as follows:

I just walked up to them and talked to them, contacted both of them and explained to them that I received a complaint of some vandalism being done a few blocks from where we were currently at and I explained to them I was curious to know if they had been in that area or if they observed anything suspicious in that area. I also asked them at that time if they had any type of identification.

Q. Did they, in fact, provide you with identification?

A. Yes, they did.

Q. What happened then?

A. I went back to my car to write their names down and to make local warrant checks on them and when I got into the car I was advised by the dispatch center that a person had just reported two bicycles had been stolen from the 1100 block of West Holly Street and the dispatcher went on to describe the bicycles as being two Fuji bicycles, silver in color and also said that either one or both of them had a chamois type of seat covering.

Q. Then what did you do?

A. That matched exactly the bicycles that these two fellows were riding. . . .

Officer Hill then arrested both appellants.

Both appellants moved to suppress the evidence. After argument by counsel and testimony from Officer Gill, the motion was denied. In separate proceedings, the appellants were convicted upon stipulated evidence of possession of stolen property in the third degree.

Aranguren and Duquesne–Valera now appeal the denial

of their motion to suppress. Appellants argue that the officer did not have a particularized and objective basis for a reasonable suspicion that they were involved in criminal activity and that they were therefore illegally detained. The State argues that the encounter between appellants and Officer Gill was not a "seizure," and that even if it was a seizure, the officer had a well founded suspicion, based on specific and articulable facts, that appellants had been involved in criminal activity.

█ Not every encounter between an officer and an individual amounts to a seizure. A person is "seized" only if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Footnote omitted.) *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). The United States Supreme Court has said that police questioning relating to one's identity, or a request for identification by the police, without more, is unlikely to result in a Fourth Amendment seizure. *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 80 L. Ed. 2d 247, 104 S. Ct. 1758 (1984).

In Washington, a police officer has not seized an individual merely by approaching him in a public place and asking him questions, if a reasonable person would have felt free to leave. *State v. Belanger,* 36 Wn. App. 818, 677 P.2d 781 (1984). In the present case, the appellants were on bicycles when the officer approached them. Such an encounter is analogous to the situation of an officer approaching an individual on foot, especially when, as appears to be the case here, the officer gets out of the car to hail the individual rather than using the flashing light and siren of the police vehicle. *See State v. Stroud,* 30 Wn. App. 392, 634 P.2d 316 (1981).

In the present case the officer did nothing wrong in stopping the appellants to ask if they had come from the area of the reported vandalism or knew anything about it.

Moreover, there was nothing coercive about the initial encounter. The officer used permissive language when he

asked, "can I talk to you guys for a minute", and it appears that when asked if they had any type of identification, they readily produced it. As indicated by the trial court in ruling on the motion to suppress:

> I don't find any support in the record for the argument that the defendants were not free to go. The testimony, as I understand it, is that at about 7:00 p.m. on January 8th Officer Gill, while he was at Broadway and Elm Street, heard a report of some vandalism on Broadway. He saw some people in the area and stated that he was within a few blocks of the reported vandalism and was curious to know if they had seen anyone or knew what was going on and asked if he could stop and talk to them. They apparently did not object to that. . . .
>
> I really have great difficulty thinking that a police officer can't ask somebody on the street if they had been in an area where there's a crime.

This is certainly consistent with the criteria set forth in *State v. Belanger, supra,* describing police encounters with citizens that do not constitute seizures. We conclude that the initial stop of the appellants was proper under the analysis set forth above. However, the officer took the appellants' identification with him to his vehicle in order to write the appellants' names down and run warrant checks on them. Courts which have directly considered this issue have found that a simple encounter can mature into an investigatory detention depending on the circumstances after the officer requests the suspect's identification. For example, if the officer hands the suspect's identification and airline ticket over to another officer and tells the suspect the officers are conducting a narcotics investigation, a seizure has occurred. *United States v. Cordell,* 723 F.2d 1283 (7th Cir. 1983), *cert. denied,* 465 U.S. 1029 (1984). If the officer asks the suspect to accompany him to a nearby office, while still retaining the ticket and identification, a seizure has occurred. *United States v. Waksal,* 709 F.2d 653 (11th Cir. 1983). If the officer retains the suspect's driver's license while asking him other questions, a seizure has occurred since the suspect is effectively immobilized

without the license. *United States v. Thompson,* 712 F.2d 1356 (11th Cir. 1983); *State v. Painter,* 296 Or. 422, 676 P.2d 309 (1984).

In this case, once the officer retained the appellants' identification and took it with him to his car, the appellants would not reasonably have believed they were free to leave. This conclusion is strengthened by the fact that these appear to have been alien identification cards, which the appellants may have been required by law to keep on their person at all times. *See* 8 U.S.C. § 1304(e). When the officer retained the appellants' identification cards in order to determine the existence of any outstanding warrants, the encounter matured into an investigatory stop. This conclusion, however, does not resolve the issue relating to the seizure of the bicycles.

Evidence which is the product of an unlawful search or seizure is not admissible. *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961). However, "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence. Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.'" *Segura v. United States,* 468 U.S. 796, 815, 82 L. Ed. 2d 599, 615, 104 S. Ct. 3380 (1984) (quoting *United States v. Crews,* 445 U.S. 463, 471, 63 L. Ed. 2d 537, 100 S. Ct. 1244 (1980)). In determining whether there is a nexus between the evidence in question and the police conduct, the court essentially makes a commonsense evaluation of the facts and circumstances of the particular case. *United States v. Kapperman,* 764 F.2d 786 (11th Cir. 1985).

In the present case, Officer Gill had already observed the bicycles before he proceeded to take the appellants' identification. Although the officer did not yet know that the bicycles were stolen, it is clear from the officer's testimony that he noticed what the bicycles looked like. Upon later hearing the description of the stolen bicycles, the officer immediately recognized that those were the bicycles in the

possession of appellants. Therefore, the officer's knowledge about the evidence was gained when he initially stopped the appellants, before the encounter matured into an investigatory stop.

Conversely, no information was acquired from the appellants once the officer retained their identification. Appellants made no incriminating statements. No contraband was discovered. Nothing about the appellants' identification revealed any evidence relating to the stolen bicycles. In sum, the unlawful police conduct did not produce any evidence and did not taint the evidence that previously had been lawfully acquired.[1]

The evidence here was not the product of an unlawful seizure; it was the product of a lawful police encounter with two individuals. Any other interpretation of the causal connection between the evidence and the police conduct here would strain the commonsense determination we make in these situations. Therefore, as long as the initial stop of the appellants was lawful, the knowledge of the bicycles was lawfully acquired, and the motion to suppress was correctly denied. Our disposition makes it unnecessary to address the State's argument that the officer had the authority to conduct an investigatory stop.[2]

---

[1]Because we find that the evidence here was not the product of unlawful police conduct, we do not address whether other doctrines, such as the independent source or inevitable discovery doctrines, may apply. We note, however, that even if the officer had returned the appellants' identification before walking back to his car, it is difficult to see how the result would have been any different. The radio information describing the stolen bicycles was available to all police officers. The officer here lawfully knew what these bicycles looked like and lawfully knew that they were in appellants' possession. Upon hearing the report of the stolen bicycles, he would still have had probable cause to arrest appellants.

[2]It is highly unlikely, however, that the facts presented would justify a forcible detention. The officer stated that he initially stopped the appellants just to find out if they had any information. Nothing in the officer's testimony indicates that there was anything suspicious in their actions or answers after he stopped them. The officer gave no further reason for proceeding to check the appellants' identification. Therefore, the only facts here which can provide the "well–founded suspicion" are the physical description of the reported vandalism suspects and the proximity to the reported crime.

The judgment is affirmed.

SWANSON and RINGOLD, JJ., concur.

One commentator has said that when the basis for a stop is a description, "in the last analysis the most important consideration is whether the description is sufficiently unique to permit a reasonable degree of selectivity from the group of all potential suspects." 3 W. LaFave, *Search and Seizure* § 9.3, at 86 (1978). Here, the description that Officer Gill received over his radio was extremely vague. The report gave no information on the sex, height, weight, features, or clothing of the suspects. The only significant facts given in the report were that three people were involved, the incident took place about 6 blocks away, and the suspects may have been described as Indian or of Indian descent. Officer Gill detained appellants, who were two rather than three, Cuban rather than Indian, and on bicycles rather than on foot. The stop took place in early evening. The area was not isolated; there was a hamburger stand and a gas station nearby. There is nothing in the record to indicate that this was a neighborhood where either Indians or Cubans would be unusual. In short, the description was not sufficiently unique to permit a reasonable degree of selectivity from the group of potential suspects. Even though the appellants were in the vicinity of the reported vandalism, therefore, the officer probably did not have a well founded suspicion to detain appellants.