THE STATE OF WASHINGTON, *Appellant*, v. JERRY A. MITZLAFF, *Respondent*.

*Bernardean Broadous, Prosecuting Attorney*, and *Jon Tunheim, Deputy*, for appellant.

*Robert M. Quillian* and *Thomas E. Doyle*, for respondent.

FLEISHER, J. — Police officers arrested Jerry Mitzlaff for

driving under the influence. During a search of his vehicle incident to arrest, the officers discovered methamphetamine taped to the fire wall of the engine compartment. The trial court granted Mitzlaff's motion to suppress the methamphetamine evidence and the State appeals. We affirm.

## FACTS

The parties stipulated to the facts of this case at the time of the suppression hearing.

In the early morning hours of August 17, 1993, Deputy Heinze of the Thurston County Sheriff's Office observed a pickup truck swerving on the highway. The truck appeared to be following two motorcycles, and exited the highway when the motorcycles did so. Deputy Heinze pulled the truck over, suspecting that the driver was intoxicated. The two motorcycles stopped across the street. Because the motorcycle riders were watching him, Deputy Heinze called for backup.

Deputy Heinze contacted the driver of the pickup truck, Jerry Mitzlaff, who at first provided false identification. Heinze noticed that Mitzlaff's speech was slow, his eyelids were droopy, and his pupils were heavily constricted. After Mitzlaff failed field sobriety tests, Heinze arrested him for driving under the influence.

Heinze then searched the truck incident to arrest, while the two motorcyclists continued to watch from across the street. In the truck's unlocked glove compartment, Heinze found a black case containing a hypodermic needle with brown liquid in it. Behind the truck's bench seat, the deputy found a black bag containing two more hypodermic syringes and a wallet. Inside the wallet, Heinze discovered two and one-half grams of methamphetamine and a plastic fuse box containing three small bags, each with one-half gram of methamphetamine. During the search, officers told Heinze that the two motorcyclists across the street had said that they would take the truck.

Under the driver's seat, Heinze found a second wallet containing Mitzlaff's true identification. On the floor of the passenger compartment, he noticed a roll of cloth duct tape. After searching the passenger compartment, Deputy Heinze pulled the truck's interior hood release. Heinze then lifted the hood and immediately saw a round cylindrical object duct-taped to the engine fire wall, just below the windshield. Inside the object were four plastic bags containing approximately three-quarters of a pound of methamphetamine.

Based on this evidence, Mitzlaff was charged with possession of a controlled substance with intent to deliver. He then motioned the trial court to suppress the methamphetamine evidence found taped to the engine fire wall. The trial court granted the motion and the State appeals.

ANALYSIS

The State argues that the trial court erred in holding that the search of the engine compartment exceeded the scope of a vehicle search incident to arrest. The State maintains that citizens have a diminished expectation of privacy in the engine compartment of their vehicles and that the existing exigencies justified the search. Mitzlaff responds that the State is attempting to expand the scope of the search incident to arrest exception well beyond its established boundaries. The State does not argue that any other exception to the requirement for a warrant applies in this case. Mitzlaff does not challenge the propriety of the initial arrest.

■ The Fourth Amendment limits the permissible scope of a warrantless search incident to arrest to the area within the arrestee's immediate control, i.e., places from which the individual might obtain a weapon or destroy incriminating evidence. *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). For automobile searches, a search incident to arrest

encompasses the entire passenger compartment of an automobile and any container therein. *New York v. Belton*, 453 U.S. 454, 462, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

The Washington State Constitution, however, affords individuals greater protection against warrantless searches than the United States Constitution. *State v. Stroud*, 106 Wn.2d 144, 148, 720 P.2d 436 (1986). Article I, section 7 of the Washington State Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision explicitly protects the privacy rights of Washington citizens. *State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 (1982). Accordingly, the *Stroud* court determined the scope of the vehicle search incident to arrest exception in Washington under independent state constitutional grounds. *Stroud*, 106 Wn.2d at 150-53.

The *Stroud* court, recognizing the need to strike a balance between individual privacy rights, public safety and the needs of law enforcement for a bright-line rule, held that:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, *officers should be allowed to search the passenger compartment of a vehicle* for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

*Stroud*, 106 Wn.2d at 152 (emphasis added). The court subsequently held that the search of the passenger compartment can occur after the driver and passengers have been removed from the vehicle, so long as the search is performed immediately thereafter. *State v. Fladebo*, 113 Wn.2d 388, 395-97, 779 P.2d 707 (1989). However, *Stroud* and its progeny have limited the scope of a vehicle search incident to arrest to the "passenger compartment."

Division Three of this court addressed the scope of the

"passenger compartment" in *State v. Johnson*, 77 Wn. App. 441, 892 P.2d 106, *review granted*, 127 Wn.2d 1009 (1995). The *Johnson* court held that the passenger compartment included the sleeping area of a truck cab located directly behind the driver's seat and reachable without exiting the cab. *Johnson*, 77 Wn. App. at 445. In so ruling, the *Johnson* court cited with approval the rule Professor LaFave advocates, that a passenger compartment should be construed "as including *all* space reachable without exiting the vehicle. . . ." 3 Wayne R. Lafave, *Search and Seizure* § 7.1(c), at 16 (2d ed. 1987) (emphasis in original); *see Johnson*, 77 Wn. App. at 444-45.

Federal cases are consistent with this rule, holding that the term "passenger compartment" includes the trunk area of a hatchback automobile and the rear section of a station wagon. *See United States v. Rojo-Alvarez*, 944 F.2d 959 (1st Cir. 1991); *United States v. Pino*, 855 F.2d 357 (6th Cir. 1988), *amended*, 866 F.2d 147 (1989), *cert. denied sub nom. Llera v. United States*, 493 U.S. 1090 (1990). State courts in other jurisdictions also have defined "passenger compartment" in a similar manner. *See State v. Delossantos*, 211 Conn. 258, 559 A.2d 164, 168, *cert. denied*, 493 U.S. 866 (1989) (search incident-to-arrest may extend to hatchback where it was unnecessary to open the hatchback from the exterior to gain access); *Commonwealth v. Bongarzone*, 390 Mass. 326, 455 N.E.2d 1183, 1198 (1983) (permissible for police to open tailgate to search within van because area searched "was within the reach of the defendants without their alighting from the vehicle").

An engine compartment, however, is not accessible without exiting the vehicle. As with the trunk of a car, the engine compartment is not an area within the arrestee's immediate control from which the individual might obtain a weapon or destroy evidence. Accordingly, the permissible search of the passenger compartment incident to arrest does not extend to include the engine compartment.

The State argues that the increased presence of interior hood releases renders the engine compartment more accessible from a vehicle's interior than when *Stroud* was decided. It further argues that an officer has no way of knowing if an individual stashed something under the hood moments before the officer approached. These arguments are unpersuasive. Many modern cars also contain interior trunk releases. Federal courts, however, repeatedly have held that trunks are outside the scope of the search incident to arrest exception. *See United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993) ("the incident-to-arrest exception does not permit the search of items in the trunk of a vehicle in which an arrestee was traveling"); *United States v. Wright*, 932 F.2d 868, 878 (10th Cir) ("trunk is not within the reach of the arrestee and thus its contents pose no immediate threat to the arresting officer"), *cert. denied*, 502 U.S. 962 (1991). Because article I, section 7 is more restrictive than the Fourth Amendment, we have no hesitancy in extending this rationale to preclude search of the engine compartment.

Finally, the State asks this court to apply the balancing test analysis used by the *Stroud* court: an individual's privacy interests must be balanced against existing exigencies and the need for a clear and workable rule. *Stroud*, 106 Wn.2d at 152. The State argues that citizens have a diminished expectation of privacy in the engine compartment of their cars. Furthermore, the State maintains that existing exigencies favor extending the incident to arrest exception to include the engine compartment. If the vehicle is left on the roadway, the public can reach up under the vehicle, into the engine compartment, and remove evidence, according to the State. The State's argument is unpersuasive. The police may impound a vehicle upon arrest of a suspect, and they may obtain a warrant to search the vehicle. In this case, a search warrant probably would have been issued based on the presence of the duct tape and Deputy Heinze's belief that additional drugs might be hidden under the hood. Exigent circumstances, therefore, are not present in this

case; we find no reason to depart from the clear and workable rule established in *Stroud*. We hold that the trial court did not err in suppressing the methamphetamine evidence found taped to the engine compartment.

Affirmed.

SEINFELD, C.J., and BRIDGEWATER, J., concur.

Review denied at 129 Wn.2d 1015 (1996).

[No. 17508-8-II. Division Two. December 20, 1995.]