638

THE STATE OF WASHINGTON, *Respondent*, v. ANNA E. HUNNEL, *Appellant*.

*David R. Johnson*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

ARMSTRONG, J. — Anna E. Hunnel appeals her Kitsap County Superior Court conviction of unlawful possession of a controlled substance, RCW 69.50.401(d). She contends that the police illegally searched her purse after arresting the driver of the automobile in which she was a passenger. Specifically, Hunnel argues that her right to privacy was violated when the police ordered her to exit the vehicle but leave her purse, which was on the floor beneath the passenger's front seat. We affirm, holding that the officer's order was lawful because the police had authority to search the purse under the "bright-line" rule enunciated in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), and *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986).

## FACTS

While on routine patrol, Deputy Earl Smith saw John Hunnel driving a car. Aware of an outstanding arrest warrant for Hunnel, the deputy stopped the car. As he approached the car, Deputy Smith saw Anna Hunnel sitting in the front passenger seat and three children sitting in the back seat. The deputy asked Anna Hunnel for identification, and he saw her produce an identification card from her purse.

Deputy Smith verified that Mr. Hunnel had outstanding arrest warrants and also learned that his driver's license was suspended in the third degree. The deputy asked Mr. Hunnel to exit the car, advised him he was under arrest, and handcuffed him. Deputy Smith then asked Anna Hunnel to step away from the car while he searched the interior of the car. Anna Hunnel tried to take her purse with her, but the deputy told her to leave it in the car.

During his search of Anna Hunnel's unlocked purse, which was on the passenger-side floor, Deputy Smith found a match holder containing two small plastic bags with a white powdery substance. Believing the substance to be methamphetamine, the deputy arrested Anna Hunnel and advised her of her *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966). Anna Hunnel agreed to speak with Deputy Smith. She told him that she had the methamphetamine in her purse for about a month, that it was for her personal consumption, and that she snorts it once a week.

Following a suppression hearing, the court concluded that: (1) prior to her arrest, Anna Hunnel was in a "noncustodial setting"; (2) Deputy Smith conducted a lawful search of the vehicle incident to John Hunnel's arrest; and (3) Deputy Smith had legal authority to search the unlocked purse that remained in the car after John Hunnel's arrest. The court admitted the drugs and Anna Hunnel's statements at trial. Anna Hunnel was convicted by bench trial on stipulated facts of one count of possession of a controlled substance, RCW 69.50.401(d).

## ANALYSIS

Hunnel argues that the officer's instruction to the passenger not to remove anything from the car was an unlawful, warrantless seizure of her purse. Whether the officer's seizure was lawful depends upon whether, at the time, the officer had the right to search the purse. If he did, he necessarily had the right to seize the purse. We, therefore, first consider whether the officer had the right to search the purse at the time he ordered Hunnel to leave it in the car.

In *New York v. Belton*, 453 U.S. 454, the Supreme Court set forth a "bright-line" rule establishing the scope of a search incident to the arrest of an occupant of an automobile. *Belton* involved the search of a passenger's purse left in an automobile after the passenger had been arrested for possession of marijuana. *Belton* held that "when a policeman has made a lawful custodial arrest of

the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460. The rationale for this search, as recognized in *Belton*, is "the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape,' and the need to prevent the concealment or destruction of evidence." *Belton*, 453 U.S. at 457 (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)).

*Belton* included within the scope of such a search all containers located in the passenger compartment, defining "container" as "any object capable of holding another object." *Belton*, 453 U.S. at 461 n.4. Hunnel's purse meets the definition of a container under *Belton*.

Washington followed the *Belton* "bright-line" rule in *State v. Stroud*, 106 Wn.2d 144.[1] *Stroud* specifically held that "[w]eighing the 'totality of circumstances' is too much of a burden to put on police officers who must make a decision to search with little more than a moment's reflection." *Stroud*, 106 Wn.2d at 151. Recognizing that the Washington State Constitution, article 1, section 7, grants privacy rights beyond those of the United States Constitution, the court held that locked containers or compartments in the passenger compartment of a vehicle are still protected. *Stroud*, 106 Wn.2d at 150-52.

Since *Stroud*, Washington courts have held that the arrest of a *passenger* in an automobile justifies a search of the passenger compartment. *State v. Cass*, 62 Wn. App. 793, 816 P.2d 57 (1991). Officers may search purses left in a vehicle by either the driver, *State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989), or the passenger, *State v. Parker*,

---

[1]Both *Belton* and *Stroud* quoted LaFave with approval: "A highly sophisticated set of rules . . . requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer' in the field.' " WAYNE R. LAFAVE, *"Case-By-Case Adjudication" Versus "Standardized Procedures": The* Robinson *Dilemma*, 1974 SUP. CT. REV. 127, 142 (quoted in *Belton*, 453 U.S. at 458) (also quoted in *Stroud*, 106 Wn.2d at 151).

88 Wn. App. 273, 944 P.2d 1081 (1997). And the search of the passenger compartment can occur after the driver and passengers have been removed from the vehicle, so long as the search is performed immediately thereafter. *State v. Mitzlaff*, 80 Wn. App. 184, 187, 907 P.2d 328 (1995), *review denied*, 129 Wn.2d 1015 (1996) (citing *Fladebo*, 113 Wn.2d at 395-97)). But, incident to the arrest of a vehicle's driver, an officer may not search the purse of a passenger *who has exited* the vehicle and removed her purse from the vehicle. *State v. Seitz*, 86 Wn. App. 865, 941 P.2d 5 (1997). We conclude that Hunnel's purse was a searchable container in the car under the rules of *Belton* and *Stroud*.

But Hunnel places great emphasis on the trial court's determination that the officer knew Hunnel owned the purse. Neither *Belton* nor *Stroud*, however, discussed ownership or limited the search of containers to those owned by the arrested person. Indeed, requiring the officer to ascertain the ownership of containers in the vehicle would so blur the *Belton-Stroud* "bright-line" rule as to make it unworkable. Moreover, Hunnel's ownership of the purse is irrelevant to the rationale of *Belton-Stroud*:

> Third-party ownership of the auto or "containers" therein would not necessarily prevent the arrestee from gaining access to those items. It should not, therefore, bar the police from searching them in the same manner as if they were owned by the arrestee.

*Staten v. United States*, 562 A.2d 90, 92 (D.C. 1989).

We recognize that Division III of this court has recently held unlawful the search of a driver's purse following the passenger's arrest. *State v. Nelson*, 89 Wn. App. 179, 948 P.2d 1314 (1997). The court distinguished *Parker*[2] *and Seitz* by the "amount of control the nonarrested person maintains over his or her personal property," *Nelson*, 89 Wn. App. at 183, and held that "[w]hen the person maintains control over the personal property and there are no furtive

---

[2]*Parker* held valid the search of a passenger's purse, still in the car, following the arrest of the driver. *Parker*, 88 Wn. App. 273.

movements indicating he or she is trying to hide something, the police are not allowed to search the property." *Nelson,* 89 Wn. App. at 183. We disagree with this analysis.

*Belton* held that, for purposes of a workable "bright-line" rule, all containers within the passenger compartment of an automobile are accessible to an arrestee. *Belton,* 453 U.S. at 460. Thus, for purposes of a search incident to an arrest, all such containers are under the "control" of that arrestee. *Belton* did not require the police to ascertain that the arrestee be in actual control, either exclusive or joint, of a container before it could be searched. Similarly, *Stroud* did not limit container searches to those under the control of the arrestee. To do so, would blur the "bright-line" rule, and return the police to "[w]eighing the totality of circumstances," the notion found unworkable in *Stroud. Stroud,* 106 Wn.2d at 151. Furthermore, even a purse under the control of a nonarrested occupant of the car is, under the *Belton-Stroud* rationale, accessible to the arrested occupant for weapons or to hide evidence. Thus, we conclude that "control" is irrelevant to the issue of what is a searchable container under *Belton* and *Stroud.*

We recognize that the "bright-line" rule encroaches upon the privacy rights of innocent passengers. But the Washington State Supreme Court has acknowledged that the privacy rights of such passengers must yield to the needs of law enforcement in car-stop situations. *State v. Kennedy,* 107 Wn.2d 1, 11-13, 726 P.2d 445 (1986).

Anna Hunnel also contends that she was illegally seized when Deputy Smith retained her identification card by ordering her to keep her purse in the car. She is correct that the seizure of her identification card was an "immobilization" or detention. *State v. Dudas,* 52 Wn. App. 832, 834-35, 764 P.2d 1012 (1988) (seizure after deputy retains pedestrian's identification card for four minutes); *State v. Aranguren,* 42 Wn. App. 452, 456-57, 711 P.2d 1096 (1985) (seizure after deputy retains bicyclists' identification cards to check warrants). But, as we have already discussed, if Deputy Smith had the right to search Anna Hunnel's

purse incident to the arrest of Mr. Hunnel, the deputy necessarily had the right to seize the purse immediately following that arrest. Moreover, the incidental seizure of Anna Hunnel's identification card caused no harm to her beyond that caused by the seizure of her purse. The drugs in her purse were not found as the result of the seizure of her identification card, but of the purse. Thus, any additional detention of Anna Hunnel by the seizure of her identification card caused no harm. *Dudas*, 52 Wn. App. at 835.

In conclusion, we hold that Hunnel's purse was a searchable container in the car pursuant to *Belton* and *Stroud*, that the officer's right to search the purse arose at the time of the arrest, and, therefore, the officer's seizure of the purse by ordering it left in the car was proper.

Affirmed.

BRIDGEWATER, A.C.J., and HUNT, J., concur.

Review granted at 135 Wn.2d 1008 (1998).