[No. 21029-1-II.    Division Two.    May 22, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY M. THOMAS, *Appellant*.

196

*Thomas E. Doyle* and *Robert M. Quillian*, for appellant (appointed counsel for appeal).

*Bernardean Broadous, Prosecuting Attorney*, and *Steven E. Straume, Deputy*, for respondent.

BRIDGEWATER, A.C.J. — Gregory M. Thomas was convicted

of possession of stolen property in the second degree and two counts of unlawful possession of a controlled substance—heroin and methamphetamine. Thomas appeals the denial of his motion to suppress evidence and statements he contends were gathered as a result of an unlawful seizure. We hold that where the detention of a passenger is lawful, the search of the vehicle is lawful, and the evidence is not obtained from the detention of the driver, the driver's detention is incidental and harmless because it did not lead to the seizure of the evidence from the car. Further, Thomas's statement that he was a heavy heroin user occurred spontaneously and after probable cause to arrest him had been obtained from statements by the passenger. Thus, the statement was unrelated to his seizure and, if there was any error, it was harmless because the lawful evidence was overwhelming. We affirm.

Thomas and his 17-year-old girl friend, Kimberly Wixom, were sitting in their car outside an Olympia deli when Police Officer Fred Doughty approached them on foot and engaged them in conversation. Officer Doughty had been observing the suspicious behavior of Thomas and Wixom for some time and decided to try to talk to them and find out what he could about them. After talking for a brief time, Officer Doughty asked if he could see their identification. Thomas voluntarily handed his driver's license to the officer. Wixom, however, said she did not have a driver's license. Officer Doughty had seen Wixom driving the car earlier, so he asked if she had a learner's permit; Wixom said she did not. Officer Doughty told the couple, "I will be right with you," and stepped back three steps to the rear of the car, where he used his hand-held radio to call in the information. He confirmed that Wixom did not have a driver's license.

Officer Doughty saw Thomas move around in the car and appear to reach for something in the car. He walked back up to the driver's side and asked Thomas if he had any weapons. Thomas said both he and Wixom had knives. Officer Doughty then asked Thomas to step out of the car,

while another officer asked Wixom to step out. He then performed a pat-down search for weapons. During the search, he noticed that Thomas had a vendor's key hanging out of his pocket.

At that point, Officer Doughty went over to talk with Wixom, while his partner came to talk with Thomas. Doughty noticed a large number of coins scattered around the car, hundreds of dollars worth. He read Wixom her rights and asked her about the coins and the vendor's key. Wixom admitted that she and Thomas had been stealing money from newspaper vending machines.

Officer Doughty went back over to the car. As he approached, he overheard Thomas telling the other officer that he had "never done so much heroin in all [his] life." Officer Doughty walked to the passenger side of the car and picked up Wixom's purse. Lying on top of the purse was a small notebook. Inside the notebook were notes about different vending machines, indicating good days and bad days. Officer Doughty attempted to advise Thomas of his rights, only to be repeatedly interrupted by Thomas, who insisted he knew his rights. Officer Doughty asked Thomas if he was stealing from vending machines and he admitted that he was. Officer Doughty asked Thomas if he could search the car, but Thomas refused. Thomas's car was impounded at the scene, but not searched apart from the seizure of the purse and notebook.

Later at the police station, Thomas signed a written consent to search his car. A subsequent search revealed $800 to $900 in coins, along with heroin, methamphetamine, scales and syringes. Thomas was charged with possession of stolen property in the second degree and two counts of possession of a controlled substance.

██ Thomas contends that he was illegally seized when the officer asked for and retained his driver's license and that Wixom's statements, his statements, and all the evidence found in his car should be suppressed as fruit of the

poisonous tree. The trial court denied Thomas's motion to suppress, finding that no seizure occurred.[1]

> [T]he determination of whether a seizure has occurred is a mixed question of law and fact. The resolution by a trial court of differing accounts of the circumstances surrounding the encounter are factual findings entitled to great deference. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994) (stating that findings of fact are binding on appeal if there is substantial evidence in the record supporting the facts). However, the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo. *Martinez [v. Nygaard]*, 831 F.2d [822,] 826 [(9th Cir. 1987)]; [*United States v.*] *Kerr*, 817 F.2d [1384,] 1386 [(9th Cir. 1987)]; *cf. Thompson [v. Keohane]*, 516 U.S. 99, 116 S. Ct. [457,] 465 [, 133 L. Ed. 2d 383 (1995)].

*State v. Thorn*, 129 Wn.2d 347, 351, 917 P.2d 108 (1996) (footnote omitted).

■■ Not every encounter between an officer and an individual amounts to a seizure. In Washington, a police officer has not seized an individual merely by approaching him in a public place and asking him questions, as long as the individual need not answer and may simply walk away. *State v. Richardson*, 64 Wn. App. 693, 696, 825 P.2d 754 (1992); *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985); *State v. Belanger*, 36 Wn. App. 818, 820, 677 P.2d 781 (1984). Restraint amounting to a seizure occurs only if, " 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Richardson*, 64 Wn. App. at 696 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)); *see also State v. Mennegar*, 114 Wn.2d 304, 310-11, 787 P.2d 1347 (1990).

■ In this case, the officer asked for Thomas's identification and then took it with him as he did a warrants check on his hand-held radio. Once an officer retains the suspect's

---

[1]Thomas's statement admitting to the theft was later suppressed by the trial court after a CrR 3.5 motion.

identification or driver's license and takes it with him to conduct a warrants check, a seizure within the meaning of the Fourth Amendment has occurred. *State v. Dudas*, 52 Wn. App. 832, 834, 764 P.2d 1012 (1988), *review denied*, 112 Wn.2d 1011 (1989); *Aranguren*, 42 Wn. App. at 456-57. Thus, Thomas was seized when the officer retained his license and stepped back to do a warrants check.

██ But our analysis does not end there; we must now determine if any of the evidence must be suppressed as "fruit of the poisonous tree." Evidence that is the product of an unlawful search or seizure is not admissible. *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 84 A.L.R.2D 933 (1961). But

> evidence will not be excluded as "fruit" unless the illegality is at least the "but for" cause of the discovery of the evidence. Suppression is not justified unless "the challenged evidence is in some sense the product of illegal governmental activity."

*Segura v. United States*, 468 U.S. 796, 815, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984) (quoting *United States v. Crews*, 445 U.S. 463, 471, 100 S. Ct. 1244, 1249, 63 L. Ed. 2d 537 (1980)). We are to make a commonsense evaluation of the facts and circumstances of the particular case to determine whether there is a nexus between the evidence in question and the police conduct. *Aranguern*, 42 Wn. App. at 457 (citing *United States v. Kapperman*, 764 F.2d 786 (11th Cir. 1985)).

██ We hold that none of the evidence the police got in this encounter was causally related to the seizure of Thomas's driver's license. When Wixom admitted that she had no driver's license, there were reasonable grounds for questioning. That occurred before the officer stepped back with the licenses to do a warrants check. Indeed, her detention is not challenged.

Before Thomas made his admission, the officer had seen the coins, newspapers, and the vendor's key; and he had obtained the statement from Wixom about Thomas's and her involvement in the theft from the newspaper boxes.

Thus, Wixom's statements are clearly separate from any seizure of Thomas; and they formed probable cause to arrest him before he gave his spontaneous statement about his increased heroin use to the other officer. From then on, the officer had the right to search the vehicle's passenger compartment. *State v. Seitz*, 86 Wn. App. 865, 869, 941 P.2d 5 (1997). The police did a partial search of the passenger compartment of the car under *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), when they took the purse and the notebook. Thus, Thomas was not free to leave with his car from the moment that Wixom was placed into custody.

Following our reasoning in *State v. Hunnel*, 89 Wn. App. 638, 949 P.2d 847 (1998), we hold that the incidental seizure of Thomas's driver's license caused no harm to him beyond that caused by the seizure of his car. The drugs and money were not found as a result of the seizure of his driver's license, but the car. The car was seized based upon probable cause formed from Wixom's statements and seeing the evidence of the coins and the newspapers in the car.

Wixom's statements formed the basis for his arrest and her statements do not flow from his detention. As was explained in *Dudas*, if police make an unlawful stop, but learn from an independent source that the individual is wanted, they are required to make an arrest and the taint ceases. 52 Wn. App. at 835. In this case, Wixom was an independent source who provided probable cause for the arrest of Thomas for theft. Again, there is no nexus between the police conduct in taking Thomas's drivers license and his spontaneous statement after Wixom had implicated him in the thefts. We will not tell the police to close their ears to statements by a detainee after they have probable cause for arrest. The car and its contents were clearly seized lawfully and the search resulted from Wixom's statements, not the seizure of Thomas. Thus, there was no nexus between the police conduct with regard to Thomas and the evidence in the car—the heroin, methamphetamine, and the coins. We are not asked to review the written consent given by Thomas allowing the search of his car

apart from the notion that it was the result of an illegal seizure of Thomas. We hold that this evidence was not the result of the seizure of Thomas and therefore not suppressible.

██ ██ We are finally left with Thomas's statement. Thomas contends that his comment to the officer that he had "never done so much heroin in all [his] life" is a product of his illegal seizure. Our analysis begins with noting that no error was assigned to the trial court's finding that this was a spontaneous statement. Furthermore, the statement came after there was probable cause to arrest him; and the probable cause was not based upon the seizure of him or his driver's license. And, even assuming that the statement was made during an illegal seizure, we would examine it under the constitutional harmless error rule. "Constitutional error is harmless only if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." *State v. Johnson*, 80 Wn. App. 337, 341, 908 P.2d 900 (citing *State v. Jones*, 71 Wn. App. 798, 812, 863 P.2d 85 (1993)), *review denied*, 129 Wn.2d 1016 (1996); *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). Using that standard, the untainted evidence—the testimony of Wixom, the coins, the methamphetamine, the heroin, scales, etc.—overwhelmingly proves Thomas's guilt. Thus, even if there was error, it was harmless.

Affirmed.

SEINFELD and ARMSTRONG, JJ., concur.

Review denied at 136 Wn.2d 1030 (1998).