54 P.3d 1250 (2002)
STATE of Washington, Petitioner,
v.
Gerardo CERRILLO, Respondent.
No. 20386-7-III.
Court of Appeals of Washington, Division 3, Panel Six.
October 3, 2002.
As Amended on Denial of Reconsideration November 21, 2002.
*1252 Carole L. Highland, Teddy Chow, Charles S. Richens, John D. Knodell, III, Prosecuting Attorney's Office, Ephrata, WA, for Appellant.
Garth Dano, Dano Law Firm, Moses Lake, WA, Robert E. Schiffner, Moses Lake, WA, for Respondent.
*1251 SCHULTHEIS, J.
Under the state and federal constitutions, warrantless seizures are per se unreasonable unless they comply with limited and narrowly drawn exceptions. State v. Kinzy, 141 Wash.2d 373, 384, 5 P.3d 668 (2000), cert. denied, 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001); State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999). One of those exceptions is the seizure consistent with a community caretaking function. Kinzy, 141 Wash.2d at 385-86, 5 P.3d 668. In this case, officers stopped and questioned two men sleeping in a truck, noticed the driver appeared to be intoxicated, and later arrested the driver after observing him commit minor traffic infractions. When the driver was charged with driving under the influence of alcohol, the trial court suppressed all evidence obtained as a result of the two seizures and dismissed.
On appeal, the State contends the initial stop fell within the community caretaking function of police officers. Further, the State argues that the officers would have made the second stop anyway, due to the independent observation of the driver's traffic infractions. We find that the initial stop was investigatory rather than a community caretaking function and that the investigation was not justified by a reasonable suspicion of criminal activity. Because we find that the unlawful stop tainted the subsequent traffic stop, we affirm.

*1253 FACTS
Early one morning in April 1999, Officer David Sands responded to a report of a suspicious vehicle parked near Denny's Restaurant in Moses Lake. He and another officer approached a parked pickup, saw two men asleep inside, and banged on the windows to wake the men up. Officer Sands stood on the driver's side. Either he or the man in the driver's seat opened the door and Officer Sands asked to see the man's identification. The man complied and proved to be Gerardo Cerrillo. Due in part to the odor of alcohol, Officer Sands decided Mr. Cerrillo might be intoxicated. He told Mr. Cerrillo to "sleep it off" and not to drive. Clerk's Papers (CP) at 18.
The officers left and Officer Sands continued to patrol the area, keeping an eye out for the pickup. About 30 minutes later, he saw the pickup leaving the parking lot and followed. Only one person was in the vehicle at this time. Officer Sands observed that the driver made a turn without using a signal, moved into a lane without using a signal, and "faded" from the inside lane to the outside lane while making a turn. CP at 19. When the officer activated his lights, the pickup pulled over. Mr. Cerrillo, who was driving, was arrested and charged with driving under the influence of alcohol.
Before trial in district court, Mr. Cerrillo moved for dismissal pursuant to State v. Knapstad, 107 Wash.2d 346, 351-53, 729 P.2d 48 (1986) (the trial court has inherent power to dismiss a case that is not supported by sufficient evidence). He argued that the officers were not authorized to stop him under any of the exceptions to the warrant requirement, including the community caretaking function. He further argued that the second stop was unavoidably tainted by the first unlawful seizure.
Officer Sands was the only witness to testify at the Knapstad hearing. He testified that he did not know who reported the "suspicious" vehicle and admitted he saw no evidence of a crime in or around the pickup. CP at 24. When asked if he would have pulled the pickup over if he had not had the prior contact, Officer Sands responded, "I really can't say one way or the other. I've ma[d]e traffic stops for exactly the same thing." CP at 39. The trial court found that the initial contact was based on the radio report of a suspicious vehicle, and not on the observations of the officers. Noting that the only applicable exception to the warrant requirement was the community caretaking function, the trial court found no evidence that signs of distress or need for assistance justified the police intrusion. Further, the court found that the second stop was a pretext, based on information obtained from the initial, unlawful contact. All evidence from the two seizures was suppressed and the charge was dropped.
The State appealed the district court's ruling to superior court, which affirmed. This court granted discretionary review.

SEIZURE
In oral argument before this court, the State argued for the first time that the initial contact between Officer Sands and Mr. Cerrillo did not rise to the level of a seizure. This issue was not addressed at district court, at superior court, or in the appellate brief. In its presentation at the Knapstad hearing, the State apparently conceded that the stop was a warrantless seizure, and confined its arguments to the application of exceptions to the warrant requirement. This court may refuse to review any issue that was not raised in the trial court. RAP 2.5(a); State v. Scott, 110 Wash.2d 682, 685, 757 P.2d 492 (1988). Because the trial court's findings of fact and conclusions of law do not address the factors relevant to whether this encounter constituted a seizure,[1] we find insufficient record for review of this issue. Consequently, we confine our review to the State's briefed arguments that the initial stop was a community caretaking function and the second stop was independently justified on the basis of Mr. Cerrillo's traffic infractions.

*1254 COMMUNITY CARETAKING FUNCTION
When a defendant brings a Knapstad motion, the trial court may dismiss criminal charges if the undisputed facts are insufficient to support a finding of guilt. Knapstad, 107 Wash.2d at 351-53, 729 P.2d 48. We will uphold the trial court's Knapstad dismissal if no rational trier of fact could have found beyond reasonable doubt the essential elements of the crime. State v. Wilhelm, 78 Wash.App. 188, 191, 896 P.2d 105 (1995). The district court here dismissed Mr. Cerrillo's charge of driving under the influence of alcohol after it excluded all evidence obtained from contact with Officer Sands. Because this is a challenge of a trial court's denial of a motion to suppress after a CrR 3.6 hearing, we ask whether substantial evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. State v. Hill, 123 Wash.2d 641, 644-45, 870 P.2d 313 (1994).
Regarding the first stop, the district court found that Officer Sands was dispatched to investigate a suspicious vehicle. Although Officer Sands observed nothing indicating that criminal conduct had occurred or that the people in the pickup needed medical or emergency assistance, he approached the pickup, knocked on the window, and requested identification from Mr. Cerrillo. The question before us is whether Officer Sands had a sound constitutional basis for this intrusion.
Generally, warrantless seizures are per se unreasonable under the Fourth Amendment of the United States Constitution. State v. Kinzy, 141 Wash.2d 373, 384, 5 P.3d 668 (2000), cert. denied, 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001). The few carefully drawn exceptions to the warrant requirement provide for those cases where the costs to society of obtaining a warrant outweigh the reasons for recourse to a neutral magistrate. Id. One exception, the investigative Terry[2] stop, allows for brief detention when there is a reasonable suspicion of criminal activity. Id. at 384-85, 5 P.3d 668. The State apparently concedes that the facts here do not support a Terry stop, because Officer Sands consistently testified that he observed no indication of criminal activity by the pickup's occupants. That leaves the only other relevant exception to the warrant requirement-the community caretaking function.
As discussed in Kinzy, 141 Wash.2d at 394, 5 P.3d 668, the community caretaking function exception usually applies to police encounters involving emergency aid and routine checks on health and safety. Such encounters must be totally divorced from a criminal investigation. Id. at 385, 5 P.3d 668. The emergency aid function applies when an officer subjectively and reasonably believes someone needs health or safety assistance and there is a reasonable basis to associate the emergency need with the place searched. Officer Sands admitted he saw no indication that the occupants of the pickup needed assistance and he did not claim that emergency assistance was the basis for his intrusion. His reasons for initially contacting Mr. Cerrillo more closely resemble the "routine check on health and safety" aspect of the community caretaking function. Id. at 387, 5 P.3d 668.
When an officer claims that he or she stopped someone on a routine safety check, the determination of the stop's reasonableness depends on a balancing of the individual's interest in freedom from police interference against the public's interest in the community caretaking function. Kinzy, 141 Wash.2d at 387, 5 P.3d 668 (quoting Kalmas v. Wagner, 133 Wash.2d 210, 216-17, 943 P.2d 1369 (1997)). Even a routine stop for a safety check, if it involves a seizure, must be necessary and strictly relevant to the noncriminal investigation. Id. at 388, 5 P.3d 668. Once the reasons for initiating the encounter are dispelled, the noncriminal investigation must end. Id.
When Officer Sands arrived at the parking lot, he saw nothing unusual and had no indication anything was wrong with the *1255 sleeping occupants of the pickup. Nevertheless, he approached with another officer one to each doorand knocked on the window. He then either opened the door himself or had Mr. Cerrillo open the door, and he requested Mr. Cerrillo's identification. The only testimony regarding the purpose of the stop was Officer Sands's statement that he was called to the scene to investigate a "suspicious vehicle." CP at 15. From the outset, the purpose of the stop suggests strongly that the officer was investigating possible criminal activity. Considering the community caretaking function's strict separation from criminal investigation, Officer Sands's intrusion exceeded the scope of a community caretaking function. Consequently, the warrantless seizure was not justified under any exception.

FRUIT OF THE POISONOUS TREE
If an initial seizure is unlawful, any subsequent search and its results must be suppressed as fruits of the poisonous tree. State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986) (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The critical question is whether exploitation of the police illegality is at least the "but for" cause of the discovery of evidence against the defendant. State v. Thomas, 91 Wash.App. 195, 201, 955 P.2d 420 (1998). Here, the State argues that even if the initial stop was unlawful, the second stop was based on intervening observations of traffic infractions.
The trial court found that Officer Sands would not have initiated the second seizure without the information gathered from the initial seizure. Officer Sands's own testimony supports this finding. As he readily admitted, he could not say whether he would have pulled over the pickup if he had not had prior contact with Mr. Cerrillo. Although he had made traffic stops for the same infractions before, in this instance he had been keeping the pickup under observation because he suspected Mr. Cerrillo would attempt to drive while intoxicated. Clearly the earlier observation that Mr. Cerrillo appeared to have been drinking was a key consideration in Officer Sands's subsequent decision to stop the pickup.
In summary, the trial court's decision that the initial stop did not qualify as a Terry stop or as a community caretaking function exception is supported by the evidence, as is the trial court's conclusion that the second stop was an exploitation of the information obtained in the first stop. Accordingly, the trial court properly excluded all evidence obtained in the two stops and dismissed the charge.
Affirmed.
WE CONCUR: SWEENEY and KURTZ, JJ.
NOTES
[1] In particular, the trial court's findings and conclusions do not illuminate whether Officer Sands's show of authority would have caused a reasonable person to believe he or she was not free to leave or to refuse to answer questions. State v. Thorn, 129 Wash.2d 347, 352, 917 P.2d 108 (1996).
[2] Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).