[No. 29392-1-III.   Division Three.   December 29, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. MAYA MICHELLE CAMPBELL, *Appellant*.

*Julian E. Trejo* (of *Trejo Law Offices*), for appellant.

*D. Angus Lee, Prosecuting Attorney,* and *Edward A. Owens, Deputy,* for respondent.

¶1 SIDDOWAY, J. — This case raises the issue of whether an officer with probable cause to believe that a car contains contraband may seize and hold not only the car for the time reasonably required to obtain a warrant and conduct a search, but also a purse belonging to an occupant as to whom individualized probable cause does not exist. Given the circumstances of this case and the trial court's unchallenged findings and conclusions, Maya Campbell's purse fell within the scope of the search warrant that the officers were seeking and obtained. Officers therefore had the authority to deny Ms. Campbell access to the purse until the warrant could be executed, and the trial court, in turn, properly denied Ms. Campbell's motion to suppress evidence of drugs found in her purse. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On an evening in September 2008, Grand Coulee police officers attempted to conduct a controlled buy of 700 pills of MDMA (Methylenedioxymethamphetamine), more commonly referred to as ecstasy, from an individual named Jeffrey Joseph based on information received from a confidential informant. When Mr. Joseph arrived that night at the agreed location—a picnic area off of a grocery store parking lot in Electric City—it was as a passenger in a sport utility vehicle (SUV) being driven by Dante Smith. Three others were in the car, one being Maya Campbell. Only Mr. Joseph stepped out of the car to discuss the drug transaction with the officers' informant.

¶3 Officers were positioned near the picnic area and one was close enough to overhear parts of the negotiations between the informant and Mr. Joseph. Among the conversation overheard was Mr. Joseph's statement that he had the pills in the car and, at another point, that he needed to discuss terms with his unidentified "partner." Report of Proceedings (RP) (Mar. 18, 2009) at 47. Mr. Joseph's actions (walking to and from the car to confer with a passenger or passengers) supported his representation. For some reason Mr. Joseph became apprehensive about the situation, however, and left with his companions without completing any sale.

¶4 Officers stopped the car shortly after it departed, based in part on Mr. Joseph's statement that drugs were in the car. Ms. Campbell was in the front passenger seat when the car was stopped. Because officers had received information that Mr. Joseph was armed, they conducted a felony stop with weapons drawn and ordered the occupants of the car to hold their hands outside of the car windows. The occupants complied, and one by one were ordered out of the car. When Ms. Campbell got out, she left her purse in the front passenger floorboard area.

¶5 While Mr. Smith reportedly gave Officer Sean Cook consent to search the car, the officers instead applied for a warrant on the advice of the prosecutor and police chief. While officers awaited the warrant, Ms. Campbell, among others, was detained. While being detained, she asked Officer Cook if she could get her purse out of the car so that she could leave. Officer Cook responded that she could not, as officers were applying for a search warrant for the contents of the car. It took approximately two hours from the time of the initial stop to obtain the search warrant. The search of the car led to the discovery of 750 pills of MDMA, found in Ms. Campbell's purse. Ms. Campbell was later arrested and charged with one count of possession of a controlled substance with intent to deliver, as well as one count of simple possession.

¶6 The trial court conducted a CrR 3.5 hearing in March 2009 to determine the admissibility of several statements made by Ms. Campbell before and after her arrest. Among the court's conclusions reached based on evidence presented at that hearing was that Ms. Campbell's continued detention at the scene while awaiting the search was not supported by probable cause and was therefore unlawful. In December 2009, a CrR 3.6 hearing was held to address the validity of the search of Ms. Campbell's purse. The parties stipulated that the trial court would decide the validity of the search based on the evidence admitted during the CrR 3.5 hearing.

¶7 After hearing argument from both sides, the trial court reviewed the telephonic warrant authorizing the search and noted that it described the place to be searched as "the vehicle," without any express limitations. RP (Dec. 9, 2009) at 166. The warrant was not admitted into evidence and does not appear in our record. The court concluded that officers were not required to return the purse to Ms. Campbell because they had authority to secure the area to be searched while the warrant was being obtained and that the search was lawfully performed. Ms. Campbell moved for

reconsideration, which the trial court denied, making the following observations about the probable cause for the warrant and the resulting scope of the search:

> Police had probable cause to believe (1) there was present in the vehicle a large number of ecstasy pills; and (2) moments before the stop, while Defendant was present in the vehicle, negotiations for delivery of the pills had occurred, which negotiations included a person going back and forth between the purported purchaser and the vehicle.
>
> The probable cause was not—as contrasted to a person's arrest—limited to the driver or any particular occupant. Rather, it was associated with the vehicle, and all its contents. That any particular item of contents, e.g., Defendant's purse, was associated with any particular occupant is irrelevant.
>
> Defendant is not the visitor who happens to be present when a premises warrant is *served*, as in [*State v.*] *Hill*, [123 Wn.2d 641, 644, 870 P.2d 313 (1994)]. Rather, Defendant, and her purse were present in the vehicle when probable cause arose, and continuously present thereafter until the vehicle was stopped. The officers had probable cause for a warrant for the vehicle and all its contents, including the purse.

Clerk's Papers (CP) at 36.

¶8 The case proceeded to trial. Ms. Campbell was convicted. On appeal she challenges only the denial of her motion to suppress.

## ANALYSIS

¶9 Ms. Campbell argues that the search of her purse was unlawful because it would not have occurred but for her unlawful detention and resulting inability to retrieve her purse and leave. She does not contest the validity of the search warrant itself, nor does she dispute the officers' authority to order her out of the car as they did. The State responds that Ms. Campbell would have had no right to retrieve her purse even if she was not detained, due to the officers' authority to secure the car while they sought a search warrant.

■ ¶10 We review a trial court's denial of a suppression motion to determine whether substantial evidence supports the challenged findings of fact and whether these findings support the trial court's conclusions of law. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). When the defendant does not challenge any of the trial court's findings of fact, we consider them verities on appeal. *Hill*, 123 Wn.2d at 644. We review the trial court's legal conclusions resulting from a suppression hearing de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

¶11 Ms. Campbell does not contest any of the trial court's factual findings and assigns error only to its legal conclusions that "[l]aw enforcement [were] not obligated to give the defendant's purse to her when she requested it" and that "[t]he search of the defendant's purse was lawful." CP at 26-27 (Conclusions of Law 3.5, 3.6). The following findings are therefore verities on appeal:

2.13 Officers knew that Jeffrey Joseph was talking with someone in the vehicle who would have been involved in the drug transaction, but did not know who that person was in the vehicle.

. . . .

2.16 Defendant asked Officer Cook if she could get her purse out of the car so she could leave and identifies it as the purse on the passenger side floor board of the vehicle she was stopped in.

2.17 The request from the defendant for her purse was not in response to any questioning.

2.18 Defendant was told she could not have her purse as the officers were applying for a search warrant for the contents of the vehicle she was stopped in.

. . . .

2.20 Officers obtained the search warrant for the vehicle and it[ ]s contents.

CP at 25-26.

¶12 Ms. Campbell does not assign error to any of the following conclusions:

3.1 The search warrant is deemed to be valid.

3.2 The search of the vehicle did not exceed the scope of the search warrant.

. . . .

3.4 Area to be searched by the search warrant can be lawfully, temporarily secured by law enforcement while awaiting the issuance of a search warrant.

CP at 26.

¶13 Among facts Ms. Campbell asks us to consider on appeal is that she was told by an officer to leave her purse in the car when initially ordered to step out, but she cites to only the trial record. There was no testimony during the CrR 3.5 hearing that such a directive was given. At the CrR 3.5 hearing, Ms. Campbell testified that she did not know that there were pills in her purse and when asked about the whereabouts of her purse and her control over it, she testified:

Q    During this time, this trip there, did you have control of your purse?

A    I don't know where my purse was. When I got into the car I had my purse—I got into the car, and—

Q    Okay. Did you give your purse to anybody? Did you hand it to—?

A    No, I didn't hand it to anybody.

Q    Okay. Did you set it on the floor of the—of the—floorboard of the SUV?

. . . .

A    I put it—put it—I obviously had it in the car, but I don't remember where I put it. I wasn't paying any attention to it. I didn't have anything in it.

Q    Okay. But you do—

A    Nothing of any importance. I had my phone with myself.

Q    Do you know of anybody else having control of your purse?

A    I do not know.

RP (Mar. 18, 2009) at 100-01. And later:

Q   Did they stop you very shortly after you left?

A   Yes, very shortly.

Q   Okay. And—did they stop you the way that Off[icer] [Daniel] Holland says they stopped you? Like were they ordering you out of the car?

A   Yes.

Q   All right. Did they say—did you hear why they were order—ordering you out of the car?

A   No.

Q   Did you follow his directions?

A   Yes.

Q   All right. So then who's the first officer that you talked with that night after you were stopped by the car?

. . . .

A   Verbally. I believe it was Off[icer] Cook.

Q   Off[icer] Cook. And that's when you were taken—after you were taken out of the car as I understand your testimony, right? And you were placed on your knees?

A   I wasn't—physically taken out of the car. But everybody in the vehicle was told to get out of the vehicle.

Q   Correct.

A   Yes.

Q   And you—you followed the orders?

A   And I followed the directions, yes.

Q   All right. And then when you got out of the car at that time did you take your purse with you?

A   No.

Q   All right. You left it in the car.

A   I didn't—I didn't have it with me, no.

Q   So you would assume you left it in the car.

A   I would—Yes. I—It was—I would assume it was in the car—

Q   Okay.

A   That was the last place that I'd seen it.

Q   And then—you're taken out, and you say the next person you spoke to was Off[icer] Cook.

A   Yes.

Q   And you say Off[icer] Cook never advised you of your rights.

A   No.

*Id.* at 106-07.

■ ¶14 Article I, section 7 of the Washington Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." *See State v. Winterstein*, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). Under article I, section 7, the requisite "authority of law" is generally a search warrant. *State v. Morse*, 156 Wn.2d 1, 7, 123 P.3d 832 (2005) (citing *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999)). There is no dispute in this case as to the validity of the warrant, so there likewise can be no doubt that officers had the "authority of law" to conduct the search. The only dispute is whether officers also had the authority to deny Ms. Campbell access to her purse left in the vehicle while the warrant was sought.

■ ¶15 In *State v. Terrovona*, 105 Wn.2d 632, 645, 716 P.2d 295 (1986), the Washington Supreme Court held that if officers have probable cause to search, they may seize a residence for the time reasonably needed to obtain a search warrant. This authority has been extended to vehicles. *State v. Flores-Moreno*, 72 Wn. App. 733, 740, 866 P.2d 648, *review denied*, 124 Wn.2d 1009 (1994); *State v. Huff*, 64 Wn. App. 641, 653, 826 P.2d 698, *review denied*, 119 Wn.2d 1007 (1992).

¶16 Once probable cause to search the car and its contents was established, officers acquired authority to seize it and deny access to it for a reasonable time while they sought a search warrant. *Flores-Moreno*, 72 Wn. App. at 741. This authority did not depend upon the lawful deten-

tion of Ms. Campbell. It therefore makes no difference whether she was lawfully detained at the scene or should have been allowed to leave; officers would have been entitled to deny her permission to retrieve her purse from the car in either case.[1] This interference with Ms. Campbell's possessory rights was reasonable, given that the purpose was to safeguard her privacy rights by first obtaining a search warrant. *See Huff*, 64 Wn. App. at 651.

¶17 Ms. Campbell likens her situation to *State v. Worth*, in which the search of a purse belonging to a guest and within the guest's immediate control during the search of a home she was visiting was held to be an unlawful search, the court holding that "readily recognizable personal effects . . . which an individual has under his [or her] control and seeks to preserve as private" were extensions of the person that were not subject to the warrant authorizing only a premises search. 37 Wn. App. 889, 893-94, 683 P.2d 622 (1984). But the Court of Appeals framed the issue as being "whether [the] search warrant comprehended within its scope, Worth's purse," *id.* at 890, which it concluded it did not, noting that "the search warrant was not issued on the basis of any information about Penny Jean Worth," *id.* at 891, and "neither the authorities who sought the warrant nor the magistrate who issued the warrant knew that Worth resided with [the owner of the premises]." *Id.* at 894.

---

[1] Ms. Campbell perhaps implicitly relies upon an argument that even if she had been allowed to leave the scene, she could not have effectively done so without being allowed to retrieve her purse. *See State v. Thomas*, 91 Wn. App. 195, 200-01, 955 P.2d 420 (recognizing that a seizure occurred when an officer, while retaining the defendant's identification, took three steps back to conduct a warrant check on his handheld radio), *review denied*, 136 Wn.2d 1030 (1998); *State v. Dudas*, 52 Wn. App. 832, 834, 764 P.2d 1012 (1988) (finding that a seizure occurred when the deputy took the defendant's identification card and returned to the patrol car), *review denied*, 112 Wn.2d 1011 (1989). These cases are distinguishable because none involves law enforcement's authority to seize a vehicle containing the personal item in question. This seizure of personal property is no less permissible than when officers seize a residence and prevent an owner's access to the inside. *See State v. Ng*, 104 Wn.2d 763, 771, 713 P.2d 63 (1985) (finding that officers lawfully admitted inside a residence by the owners properly seized a bedroom subsequent to arresting and removing the occupant while a search warrant was sought).

It was because the purse did not come within the scope of the warrant that it found the search of Ms. Worth's purse to be an impermissible search of her person. *Id.* at 892.

¶18 In *Hill*, our Supreme Court embraced the principle that "generally officers have no authority under a premises warrant to search personal effects an individual is wearing or holding." 123 Wn.2d at 644 (citing *Worth*, 37 Wn. App. 889). But the defendant in *Hill* had not challenged the trial court's finding that " '[a]lthough there was some evidence that the sweatpants were defendant's, it is not clear that this was obvious to the officer before he searched the pants; the pants were on the floor near the door and not obviously associated with the defendant.' " *Id.* at 647 (alteration in original). So the court concluded Mr. Hill's effort to come within the search limitation recognized in *Worth* failed on account of the court's unchallenged, irreconcilable finding.

¶19 Ms. Campbell faces a different problem bringing herself within the material circumstances of the *Worth* and *Hill* cases. On the one hand, she was the only woman in the SUV, the purse was found on the floorboard of the front passenger seat where she was sitting, and she and others identified it to officers as her purse. The State cannot argue that it was not recognizable as her personal effect. But the distinction made by the trial court is viable: the probable cause for the search warrant in Ms. Campbell's case was associated with the vehicle and all of its contents and the purse came within the scope of the warrant.

¶20 Circumstances can exist where probable cause may exist for a search of an individual's property even though officers do not have equivalent probable cause that the owner of the property is involved in crime. *Cf. Zurcher v. Stanford Daily*, 436 U.S. 547, 556-57, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978) (Fourth Amendment does not prevent issuance of a warrant to search property simply because the owner or possessor is not reasonably suspected of criminal involvement); *see also* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE:

A Treatise on the Fourth Amendment § 4.10(b) at 747-48 (4th ed. 2004) (distinguishing entitlement to search a visitor's belongings where police have grounds to believe items sought in the warrant might be concealed there). Both *Worth* and *Hill* implicitly recognize that personal property belonging to someone other than the owner of premises can be subject to a warrant for a premises search where probable cause exists and the scope of a warrant is accordingly broad: *Worth*'s holding depends on its reasoning that no probable cause brought Worth's purse within the scope of the warrant. *Hill*'s holding that "*generally* officers have no authority under a premises warrant to search personal effects an individual is wearing or holding" implies that sometimes they do. 123 Wn.2d at 644 (emphasis added).

¶21 The undisputed findings of the trial court in this case—verities on appeal—are that Officer Cook denied Ms. Campbell access to her purse because he believed it to be within the scope of the warrant that was being applied for (Finding of Fact 2.18) and that the search warrant eventually obtained was for the vehicle and its contents (Finding of Fact 2.20). Mr. Joseph's statements and behavior in the course of his negotiations provided reason for officers to believe that the drugs, while in the car, were in an unknown location, and that another unknown occupant of the car was a "partner" in the potential sale. Ms. Campbell does not assign error to the trial court's conclusions that the search warrant was valid (Conclusion of Law 3.1) and that the search of the vehicle did not exceed its scope (Conclusion of Law 3.2). Because the purse fell within the scope of the warrant, officers were not required to release it while awaiting the warrant and its search, once the warrant was obtained, was not an unlawful search of Ms. Campbell's person.[2]

---

[2] We find this a sufficient basis for rejecting Ms. Campbell's appeal but agree with the State that, in addition, Ms. Campbell did not have immediate control over her purse at the time the search warrant was executed. Left on the floorboard

¶22  Both parties also refer to *State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999). This was a pre-*Gant*[3] search-incident-to-arrest case that considered whether a non-arrested passenger's personal belongings could be searched incident to the arrest of the driver. In a plurality opinion, the court established at minimum that a passenger's personal effects, known to officers as belonging to the passenger, may not be searched incident to the arrest of the driver if not in the "immediate control" of the driver. *Id.* at 502-03 (Johnson, J., plurality), 517-19 (Alexander, J., concurring in part, dissenting in part). The decision has no application here, however, because officers did not rely on a search incident to arrest for the authority of law to conduct the search; they obtained a valid warrant that included the purse within its scope.

¶23  Affirmed.

KULIK, C.J., and KORSMO, J., concur.

Review denied at 174 Wn.2d 1006 (2012).

---

when Ms. Campbell got out of the car, the purse ceased being an extension of Ms. Campbell's person.

[3] *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).