FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42751-6-II |
| Respondent, | |
| v. | |
| RUSSEL A. FORD, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Russel A. Ford appeals his jury trial conviction for heroin possession. He argues that the superior court erred in denying his motion to suppress evidence that officers found in his backpack during the warrantless search of a vehicle in which he had been a passenger, to which vehicle search the driver had consented. Ford contends that this search violated his Fourth Amendment[1] right to be free from unreasonable searches and his right to privacy under the Washington Constitution, article 1, section 7, because the vehicle's driver had no authority to consent to the search of his backpack that he left in the vehicle's backseat. We hold that the superior court did not err in denying Ford's motion to suppress because (1) the vehicle driver's consent authorized the warrantless search of the vehicle and its contents, and (2) the officer had no way of knowing that the backpack, which bore no external identification, belonged to Ford. We affirm.

---

[1] U.S. CONST. amend. IV.

No. 42751-6-II

## FACTS

While watching the Hoquiam home of a suspect in another case, Officer Brian Dayton observed a vehicle pull over at the suspect's house. When Dayton pulled up behind the vehicle, it quickly drove away. Without activating his overhead lights or making any show of authority, Dayton followed the vehicle until it pulled into the "Aberdeen Swanson's" parking lot. Verbatim Report of Proceedings (VRP) at 8. The driver, Alina Alvarado, was associated with the suspect in the other case. When she exited the vehicle, Dayton asked her several questions about whether she had seen this suspect and why she had appeared to be going to stop at his home.

Dayton also recognized Alvarado's front seat passenger as Russel A. Ford, for whom there was an outstanding arrest warrant. Dayton arrested Ford and seated him in the back of the police car, approximately five or six feet from Alvarado's vehicle.

Having smelled marijuana when Ford opened his passenger's side door, Dayton told Alvarado that he could smell marijuana and asked for her consent to search her vehicle. Alvarado appeared hesitant at first. But after Dayton read her a consent form,[2] she agreed to the vehicle search, signed the form, and stood by her vehicle while Dayton searched it.

In the backseat on the passenger side floorboard, Dayton found and searched an unlocked backpack, which displayed no identifying marks or name tags indicating ownership. Inside the

---

[2] The consent form provided:
    1. I may lawfully refuse to consent to the search requested;
    2. If I consent to the search, I can revoke my consent to the search at any time;
    3. I can limit the scope of the consent to the search to certain areas of the dwelling/premises or vehicle . . . .
    . . . I have decided to freely and voluntarily give my consent to the police to search and/or seize property from the entire dwelling/premises or vehicle.
Clerk's Papers (CP) at 7.

2

backpack, he found (1) several plastic baggies whose contents later tested positive for heroin; (2) several more baggies containing substances later identified as marijuana and methamphetamine; (3) other drug paraphernalia; and (4) a "Valentine's Day" card from "Alina" to "Rusty." VRP at 13. At no time during the search did Alvarado revoke consent or limit the search of her vehicle.

The State charged Ford with heroin possession. Before trial, Ford moved to suppress the backpack's contents. At the suppression hearing, Dayton testified that (1) he "always asks for consent first" because that "eliminates a lot of extra paperwork . . . and . . . the process of taking the vehicle from [the] owner";[3] (2) the consent form that Alvarado signed included consent to "search and/or seize property from the . . . vehicle"; and (3) he did not ask for Ford's permission to search because the vehicle was registered to Alvarado. Clerk's Papers (CP) at 7. A jury convicted Ford as charged. Ford appeals.

## ANALYSIS

Ford argues that the trial court should have granted his motion to suppress because (1) in consenting to the search her vehicle, Alvarado lacked authority to consent to a search of his backpack in the vehicle's backseat; and (2) the resultant warrantless search of his backpack violated his Fourth Amendment[4] right to be free from unreasonable searches and his right to privacy under the Washington Constitution, article 1, section 7. These arguments fail.

### I. STANDARD OF REVIEW

Ford does not assign error to any finding of fact; therefore, we treat the trial court's findings of fact as verities on appeal. *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859

---

[3] VRP at 15.

[4] U.S. CONST. amend IV.

No. 42751-6-II

(2011) (citing *State v Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)), *review denied*, 174 Wn.2d 1006 (2012); *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001), *review denied*, 145 Wn.2d 1016, 41 P.3d 483 (2002).

Ford challenges the trial court's legal conclusions that (1) Dayton was not required to gain Ford's consent because Ford, as a mere passenger, had no authority over the vehicle; and (2) Dayton was entitled to search all unlocked containers in the vehicle "unless he knew or should have known that a particular item was the personal effect of a passenger who was not independently suspected of criminal activity." Br. of Appellant at 1; CP at 6 (CL 4). We review a trial court's conclusions of law to determine whether its findings of fact support them. *Campbell*, 166 Wn. App. at 469 (citing *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007)). We review de novo a trial court's legal conclusions, including those resulting from a suppression hearing. *See Campbell*, 166 Wn. App. at 469 (citing *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996)). Here, the trial court's factual findings support its legal conclusions.

II. CONSENSUAL SEARCH OF VEHICLE AND BACKPACK

Under article 1, section 7 of the Washington Constitution, warrantless searches are per se unreasonable. *State v. White*, 135 Wn.2d 761, 769, 958 P.2d 982 (1998). Limited exceptions to the warrant requirement are "'jealously and carefully drawn'"; consent is one such exception. *State v. Hendrickson*, 129 Wn.2d 61, 70-71, 917 P.2d 563 (1996) (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 61 L. Ed. 2d 235 (1979), *overruled on other grounds by United States v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d (1991). To show a valid consensual

4

search, the State must meet the following requirements: (1) The consent must be voluntary; (2) the person granting consent must have authority to consent; and (3) the search must not exceed the scope of the consent. *State v. Reichenbach*, 153 Wn.2d 126, 131, 101 P.3d 80 (2004). Ford does not contest that Alvarado consented to Dayton's search of her car and its contents. Ford argues only that Alvarado's authority to consent to the search of her vehicle did not extend to the search of his backpack on the backseat. We disagree.

When Dayton arrested Ford and removed him to the patrol car, Ford left his backpack behind in Alvarado's vehicle. The backpack bore no external indicia of its owner's identity, and it was not readily recognizable as belonging to Ford, or to anyone.[5] Ford neither asserted ownership of the unmarked backpack nor gave Alvarado and/or Dayton any instructions about the backpack; instead, he was silent.[6] Our Supreme Court has distinguished "readily

---

[5] That the backpack was not obviously identifiable as belonging to Alvarado does not negate her voluntary consent to search her vehicle and its contents. *Compare, State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999), in which the Washington Supreme Court reversed convictions based on evidence unlawfully seized from personal items that officers *knew* belonged to non-arrested vehicle passengers. *Parker*, 139 Wn.2d at 489. Moreover, these vehicle searches occurred incident to arrest of the vehicles' drivers; they did not involve the drivers' consent to search their vehicles. *Parker*, 139 Wn.2d at 489. We note that although *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), invalidated vehicle searches incident to arrest, it did not address the consent exception to the warrant requirement for vehicle searches.

We are aware of no post-*Gant* cases altering the consent exception in the state of Washington. On the contrary, Division One of our court implicitly recognized the continued viability of the consent exception in *State v. Monaghan*, 165 Wn. App. 782, 784, 266 P.3d 222 (2012), in which it held that search of a locked container in the truck of a vehicle exceeded the scope of the owner's consent to search the trunk and, therefore, was illegal under the state constitution.

[6] *See Cantrell*, in which our Supreme Court noted that a nonconsenting passenger's silence during a vehicle's search was "inconsistent with his later claim he retained an expectation of privacy." *State v. Cantrell*, 124 Wn.2d 183, 191-92, 875 P.2d 1208 (1994) (citing *United States v. Anderson*, 859 F.2d 1171, 1176-77 (3d Cir. 1988)) (driver's consent to search automobile was applicable to passenger although neither occupant was the owner).

recognizable personal effects," which "are protected from search to the same extent as the person to whom they belong," from items abandoned or *not readily recognizable* as personal effects of persons under arrest[7] or otherwise falling within circumstances involving diminished expectations of privacy. *State v. Parker*, 139 Wn.2d 486, 498-500, 987 P.2d 73 (1999) (citing *State v. Hill*, 123 Wn.2d 641, 644, 647, 870 P.2d 313 (1994)); *State v. Worth*, 37 Wn. App. 889, 892, 683 P.2d 622 (1984).

As our Supreme Court further explained, "[Requiring] that an officer obtain each occupant's permission before a search of a vehicle can be conducted . . . is both unworkable and goes beyond the requirements of existing federal case law." *State v. Cantrell*, 124 Wn.2d 183, 190-91, 875 P.2d 1208 (1994). We hold, therefore, that under the circumstances here, after obtaining Alvarado's consent to search her vehicle and its contents, Dayton was not required also to obtain Ford's consent to search the vehicle or the backpack in the backseat.[8]

---

The *Cantrell* Court acknowledged that it did not have before it and did not address whether the driver's consent to search a vehicle would be valid and apply to another occupant who "overtly objected to the search." *Cantrell*, 124 Wn.2d at 192-93. Similarly, the instant case did not involve any overt assertion by Ford of ownership of the backpack or objection to the search.

[7] *Compare* to *State v Evans*, 159 Wn.2d 402, 412-13, 150 P.3d 105 (2007), holding that the defendant's denial of ownership of a locked briefcase on the backseat of his vehicle did not constitute voluntary abandonment.

[8] In arguing that Alvarado nevertheless lacked authority to consent to Dayton's search of his backpack in her car's backseat, Ford relies on *State v. Morse*, 156 Wn.2d 1, 123 P.3d 832 (2005). In *Morse*, our Supreme Court held, "One who has equal or lesser control over a *premises* does not have authority to consent for those who are present and have equal or greater control." *Morse*, 156 Wn.2d at 4-5. Ford's reliance on *Morse* is misplaced. First, *Morse* involved a consensual warrantless search of a home, not a vehicle. Second, it was a mere houseguest who consented to the home's search and who, the Court held, as a matter of law, lacked authority to consent to the search of a non-consenting tenant's apartment, despite the subjective beliefs of the officers who had obtained "consent" and searched the house. *Morse*, 156 Wn.2d at 4-5.

We hold that (1) as the vehicle's owner and driver, Alvarado had control over the vehicle's contents and clear authority to consent to their search, including the backpack in the backseat; (2) she gave her voluntary consent, which authorized the officer's search of her vehicle and its contents; and (3) the trial court did not err in denying Ford's motion to suppress. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Johanson, A.C.J.

_____
Quinn-Brintnall, J.

---

Ford also relies on another house/apartment search case, which similarly does not apply to the consensual vehicle search at issue here: *State v Rison*, 116 Wn. App 955, 957-58, 69 P.3d 362 (2003), *review denied*, 151 Wn.2d 1008 (2004). As our Supreme Court has noted, "There is less expectation of privacy in an automobile than in either a home or an office." *Cantrell*, 124 Wn.2d at 190. Again, the search at issue here involved a vehicle, not a house. Ford was neither the owner nor the possessor of the vehicle. He had been seated in the front seat, not near the backpack in the backseat. The backpack contained no identifying marks suggesting that it belonged to Ford; nor did he say or do anything asserting ownership that might have alerted Dayton to seek Ford's consent before searching the backpack.