IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33953-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DESARAE M. DAWSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — At issue in this appeal of Desarae Dawson's conviction for

possession of a stolen motor vehicle is the question of what warnings are essential, before

law enforcement questions an individual in custody, in order to comply with *Miranda v.

Arizona.*[1] Ms. Dawson challenges the failure of the first officer who questioned her to

warn Ms. Dawson of her right to stop answering questions at any time and speak with a

lawyer. She contends that her statements to that officer were not knowing and voluntary

and that her statements to a detective the next day were tainted by the prior day's

violation of her rights.

The warning Ms. Dawson complains was omitted was not constitutionally

required, so the trial court's findings and conclusions in denying her motion to suppress

were supported by the evidence and the law. We affirm.

---

[1] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## FACTS AND PROCEDURAL BACKGROUND

A 2001 black Subaru Legacy that had been reported stolen was spotted on the streets of Spokane and watched by officers for over an hour before Desarae Dawson approached the Subaru, entered it, and drove off. Ms. Dawson was stopped and placed under arrest. Officer Stephanie Kennedy recited to Ms. Dawson her *Miranda* rights. Officer Kennedy had been a police officer since January 1999 and did not use a card preprinted with *Miranda* warnings, relying instead on her memory. A witness, Officer Phillips,[2] was present to confirm that Ms. Dawson acknowledged and understood her rights and agreed to waive them before interrogation began.

In responding to Officer Kennedy's questions, Ms. Dawson initially said her sister had purchased the car on Craigslist, but would not show Officer Kennedy the Craigslist listing or provide the officer with her sister's phone number. Ms. Dawson eventually admitted to Officer Kennedy that she knew the car was stolen, although she added "this is the only stolen car I've been in in the last month." Report of Proceedings (RP) at 62.[3]

Detective Craig Wendt was assigned to the case and visited Ms. Dawson in jail the next day to question her about the stolen car and other matters. Before their discussion, he read Ms. Dawson *Miranda* warnings from a preprinted card, which Ms. Dawson signed to signify that she understood her rights and wanted to waive them.

---

[2] Officer Phillips's first name does not appear in the record.

[3] All citations to the Report of Proceedings refer to RP (Nov. 9, 2015).

During Detective Wendt's questioning, Ms. Dawson acknowledged having been read her *Miranda* rights by Officer Kennedy, affirmed she had told Officer Kennedy the Craigslist story, and affirmed she had admitted to Officer Kennedy that she knew the car was stolen but that she was driving it "because she needed a ride." RP at 34. At first, she stated to Detective Wendt that she did not know who had stolen the car but later she told him that she did not want to say who had stolen the car.

After the State charged Ms. Dawson with possession of a stolen motor vehicle, the trial court conducted a CrR 3.5 hearing to determine whether the incriminating statements Ms. Dawson had made to Officer Kennedy and Detective Wendt should be suppressed.

During direct examination in the CrR 3.5 hearing, Officer Kennedy was asked if she could tell those in attendance "off the top of your head" what a custodial detainee's rights were. RP at 53. She answered, "Absolutely," and demonstrated:

I explained to her you have the right to remain silent. You have the right to an attorney. If you cannot afford an attorney, one will be appointed for you before any questioning if you so desire.

*Id.*

When it came time for the defense to cross-examine Officer Kennedy, she volunteered that she misspoke on direct examination and left something out when reciting the *Miranda* warnings. She explained that she is usually looking at the suspect rather than a lawyer when she recites the warnings, and the courtroom setting made her nervous. Correcting herself, she testified that she would have told Ms. Dawson instead:

3

[A]t this time you have the right to remain silent. Anything you say can and will be used against you in the court of law. You have the right to an attorney. If you cannot afford one, one will be appointed for you without cost before any questioning if you so desire. Do you understand these rights as I've read them to you[?]

RP at 65.

At the conclusion of the hearing, the trial court orally ruled that the statements made to Officer Kennedy and Detective Wendt were admissible. As to Officer Kennedy's memory lapse, the trial court complimented defense counsel on his advocacy, but stated:

> While it might be good practice for an officer to use a preprinted rights card each time, my experience is that law enforcement officers do not. The crucial issue is that they advise the individual of those rights before inquiring and Officer Kennedy testified she did advise Ms. Dawson of her rights and that Ms. Dawson knowingly, intelligently and voluntarily waived her right to an attorney and waived the right to remain silent and chose voluntarily to speak.
> So although, again, the Court would prefer everybody to have a preprinted rights card signed, it makes things less perplexing for me, it's not required. The law doesn't require it. The law requires that somebody be read their rights and that's the evidence before the Court. I'm satisfied that everything that was testified to by Officer Kennedy in terms of Ms. Dawson's statements to her in the backseat of a law enforcement car on December 9, 2014, are admissible.

RP at 77-78.

At trial, Ms. Dawson testified in her own defense and denied telling Officer Kennedy or Detective Wendt that she knew the vehicle was stolen. The jury nonetheless found her guilty. The trial court sentenced her to 53 months' confinement. She appeals.

4

ANALYSIS

Ms. Dawson challenges the denial of her motion to suppress, assigning error to the trial court's third finding of fact, that "[t]he arresting officer, Stephanie Kennedy, Mirandized Ms. Dawson of her 5th Amendment rights from memory," and to its sixth conclusion of law, that "Ms. Dawson was given her *Miranda* rights when she spoke to Officer Kennedy and she waived her 5th Amendment rights." Clerk's Papers (CP) at 87-88. She contends that five warnings are required by *Miranda*, one being that a suspect can stop answering questions at any time until able to speak with a lawyer. She argues that Officer Kennedy's omission of that right, twice, in reciting warnings at the suppression hearing is compelling evidence that the officer did not impart the fifth warning to Ms. Dawson. She argues that because the warnings were incomplete, any waiver of her rights was not knowing or voluntary, and any statements she made should have been suppressed at trial. She argues that despite Detective Wendt's administration of a proper warning, any statements he obtained were not sufficiently attenuated from the coercive interrogation by Officer Kennedy to be admissible.

When reviewing denial of a motion to suppress a confession, we examine "whether substantial evidence supports the challenged findings and whether the findings of fact support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is considered substantial when it is sufficient "'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98

5

Wn. App. 152, 156, 988 P.2d 1038 (1999). We review the trial court's conclusions of law de novo. *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011).

The Fifth Amendment to the United States Constitution "provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" *State v. Templeton*, 148 Wn.2d 193, 207, 59 P.3d 632 (2002). The Washington Constitution's equivalent to the Fifth Amendment is article I, section 9[4] and "'should receive the same definition and interpretation as that which has been given to'" the Fifth Amendment by the United States Supreme Court. *Id.* at 207-08 (quoting *City of Tacoma v. Heater*, 67 Wn.2d 733, 736, 409 P.2d 867 (1966)).

To ensure the Fifth Amendment's protections, the United States Supreme Court held in *Miranda* that law enforcement must fully explain a suspect's constitutional rights before questioning her. 384 U.S. at 444-45. In *In re Personal Restraint of Woods*, our Supreme Court characterized *Miranda* as requiring a four-part warning, stating that it required that "a suspect in custody must be warned prior to any questioning that: (1) he has the absolute right to remain silent, (2) anything that he says can be used against him, (3) he has the right to have counsel present before and during questioning, and (4) if he cannot afford counsel, one will be appointed for him." 154 Wn.2d 400, 434, 114 P.3d 607 (2005), *overruled in part on other grounds by Carey v. Musladin*, 549 U.S. 70 127 S.

---

[4] "No person shall be compelled in any criminal case to give evidence against himself." WASH. CONST., art. I, § 9.

6

Ct. 649, 166 L. Ed. 2d 482 (2006) (citing *State v. Brown*, 132 Wn.2d 529, 582, 940 P.2d 546 (1997)).[5]

Even though the warnings identified in *Miranda* are required, "there is no requirement that the warnings be given in the precise language stated in *Miranda*." *Woods*, 154 Wn.2d at 434 (citing *Duckworth v. Eagan*, 492 U.S. 195, 202-03, 109 S. Ct. 2875, 106 L. Ed. 2d 166 (1989)). In reviewing a challenge to the sufficiency of warnings, we examine "'whether the warnings reasonably and effectively conveyed to a suspect his rights as required by *Miranda*.'" *Woods*, 154 Wn.2d at 434 (quoting *Brown*, 132 Wn.2d at 582.

The record of the CrR 3.5 hearing is clear that in twice reciting the warnings she gives before interrogating a suspect, Officer Kennedy made no mention of a right to stop answering questions at any time until able to speak with a lawyer. To evaluate her challenge to the trial court's finding and conclusion, then, we must address whether that right is essential to "*Mirandiz*[*ing*]" a person in custody or being "given [one's] *Miranda* rights"—the language used in the challenged finding and conclusion. CP at 87-88. It is

---

[5] This tracks language in *Miranda* that the suspect must be told that

> he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 479.

7

not one of the four warnings that our Supreme Court gleaned from *Miranda* in *Woods*, 154 Wn.2d 400.

Ms. Dawson relies on the United States Supreme Court's decision in *Duckworth* for her contention that a fifth warning—of a right to stop answering questions until able to speak with a lawyer—is constitutionally required. *Duckworth*, a habeas petition challenging an Indiana conviction, and specifically, the "advice of rights" form used in Indiana, involved warnings that differed substantially from the warnings challenged here. The Indiana form informed a suspect

> that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to speak to an attorney before and during questioning, that he had "this right to the advice and presence of a lawyer even if [he could] not afford to hire one," and that he had the *"right to stop answering at any time until [he] talked to a lawyer."*

*Duckworth*, 492 U.S. at 203 (alterations original) (emphasis added). The Court held that these warnings "touched all of the bases required by *Miranda*." *Id.*

But what was at issue in *Duckworth* was language in the advice of rights form stating, "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." *Id.* at 198 (emphasis omitted). A divided panel of the Seventh Circuit Court of Appeals had reversed the petitioner's conviction, concluding that the language denied the person in custody "'a clear and unequivocal warning of the right to appointed counsel before any interrogation,'" and "'link[s] an indigent's right to counsel before interrogation with a future event.'" *Id.* at 200

8

(alteration in original) (quoting *Eagan v. Duckworth*, 843 F.2d 1554, 1557 (7th Cir.1988)). The Supreme Court reversed. In holding that Indiana's form "touched on all the [*Miranda*] bases," the Court explained that the Court of Appeals misapprehended the effect of the "if and when you go to court" language, which merely explained, for indigent defendants, when Indiana procedure provided that counsel would be appointed.

The Supreme Court in *Duckworth* addressed the *sufficiency* of Indiana's advice of rights form but did not address the extent to which its contents were *necessary*. The controlling case that does address whether a suspect must be told she can stop answering questions at any time until able to speak with a lawyer—and concludes that she need not be told—is *Woods*. The defendant in *Woods* made precisely the same argument as Ms. Dawson, and our Supreme Court rejected it. 154 Wn.2d at 434-35.

Ms. Dawson also relies on a more recent Washington decision, *State v. Mayer*, however, which she argues requires some equivalent to the fifth warning given in *Duckworth*. The court in *Mayer* points to language in *Miranda* indicating that the Supreme Court's concern in that case was with "'effective means . . . to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it,'" and that *Miranda* requires that the rights it identifies be "'explained fully.'" 184 Wn.2d 548, 557, 362 P.3d 745 (2015) (emphasis omitted) (quoting *Miranda*, 384 U.S. at 444). The *Mayer* court then states, "This explanation of rights must convey to the suspect that

9

his right to silence—and his opportunity to exercise that right—applies continuously throughout the interrogation process." *Id.*

In isolation, this discussion in *Mayer* appears to muddy what in *Woods* was a clear rejection of requiring any warning beyond the core four. But *Mayer* did not overrule *Woods*, and our Supreme Court in *Mayer* was addressing a different factual context: after unchallenged *Miranda* warnings, the suspect asked how and when a lawyer would be appointed for him if requested, and received answers that obscured the meaning of the initial warnings. The confusing answers made it doubtful that the suspect's willingness to continue was knowing and intelligent. *Id.* at 556-57.

The section of *Miranda* from which *Mayer* quotes this language about a "continuous opportunity to exercise" the right to silence requires the State to develop effective means to do two things. *Miranda*, 384 U.S. at 444-45. It must develop effective means (1) to inform accused persons of their right of silence, and (2) to assure a continuous opportunity to exercise it. *Id.* at 444. The first can be satisfied by the four-part warning that *Miranda* identifies as sufficient. The second is satisfied by responding appropriately to what happens thereafter. *Miranda* states:

> The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own

10

does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

*Id.* at 444-45.

For these reasons, we do not read *Miranda* as requiring a fifth warning that the suspect can stop answering at any time until she talks to a lawyer, and we do not read *Mayer* as retreating from or modifying the controlling holding of *Woods.*

Substantial evidence supports the trial court's finding that Ms. Dawson was Mirandized before providing the statements she sought to have suppressed. Ms. Dawson's argument and authority dealing with taint and attenuation assumes a violation of *Miranda* by Officer Kennedy and, since we find no violation, need not be addressed.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

11