IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80634-3-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| STEPHEN MARK SHELLABARGER, | |
| Appellant. | |

CHUN, J. — A dog sniff led to the discovery of methamphetamine in Stephen Shellabarger's truck. The State charged him with possession of a controlled substance. Shellabarger moved to suppress the drugs, which motion the trial court denied. Shellabarger then waived his right to a jury trial and proceeded to a stipulated bench trial, reserving his right to appeal the denial of his motion to suppress. The court convicted him as charged. Shellabarger appeals. Because the dog sniff prolonged the traffic stop at issue without reasonable suspicion, we reverse to suppress the evidence.

I. BACKGROUND

Trooper Michael Farkas pulled Shellabarger over after witnessing him speeding and changing lanes without signaling. Shellabarger took several minutes to find his license, registration, and proof of insurance. Farkas returned to his patrol vehicle and ran a check on Shellabarger's license, which revealed a prior conviction for possession of a controlled substance. Farkas called Trooper

Citations and pin cites are based on the Westlaw online version of the cited material.

Evan Clark for backup, stating that he would try to get Shellabarger's consent to search his truck, and that he planned on issuing a citation for Shellabarger's driving.

Farkas returned and twice asked for consent to search Shellabarger's truck. Shellabarger did not consent. Farkas conducted field sobriety tests on Shellabarger.

Farkas returned to his patrol vehicle and asked another officer to conduct a dog sniff, stating that while Shellabarger's balance was bad, he did not plan to issue a citation for driving under the influence (DUI). Farkas stated that he wanted to see if a dog sniff would provide probable cause for a search warrant.

Farkas then brought Shellabarger back to his patrol vehicle and used a portable breathalyzer test on him. The test indicated a blood alcohol content of zero. Farkas did not issue a DUI citation but did issue a citation for speeding and explained it to Shellabarger. Just as Farkas and Shellabarger finished discussing the specifics of the citation, Deputy Richard VanWyck arrived at the truck with his K9 partner, Axel, and began a dog sniff. Shellabarger asked, "What's happening here?" Farkas responded that they were "just checking the vehicle." The two discussed no further details of the citation after the dog sniff began.

Axel gave a "weak alert" near a McDonald's bag inside the truck. Officers again asked for consent to search the truck, which Shellabarger granted. Officers asked Shellabarger to remove the McDonald's bag from the truck. He removed it and Farkas took the bag from him. Officers opened the bag and

found an Altoids tin inside that contained methamphetamine. The State charged Shellabarger with possession of methamphetamine.

Shellabarger moved to suppress the evidence found in the search. Farkas testified at the suppression hearing. He stated that his first observation of Shellabarger was that he had bloodshot watery eyes, fast speech, and very quick body movements, all of which were consistent with use of stimulants. Farkas also stated that he had called for additional backup because he saw Shellabarger making furtive movements in his truck, he smelled marijuana, and he saw objects such as mint tins that can be used to store drug paraphernalia.

The trial court denied Shellabarger's motion to suppress. It concluded that "[t]he expansion of the stop beyond the investigation of the observed infractions was justified given Trooper Farkas's observations of impairment," and that "[t]he length of detention for the entire stop was reasonable given all that was taking place from the time the vehicle was pulled over." It also concluded that "[t]he K9 search was reasonable since the processing of the citation had not been completed when the search began." Shellabarger then waived his right to a jury trial and proceeded to a stipulated bench trial under the agreement that he could appeal the denial of his motion to suppress. The court convicted him as charged.

## II. ANALYSIS

Shellabarger argues that the dog sniff of his truck prolonged the traffic stop without reasonable suspicion, and thus the trial court should have suppressed the evidence seized in the ensuing search. The State responds that the dog sniff did not exceed the scope of the stop because it did not prolong the

stop beyond the time reasonably required to investigate a possible DUI and issue a traffic citation. But the State fails to show by clear and convincing evidence that (1) the dog sniff did not prolong the traffic stop, and (2) Trooper Farkas had reasonable suspicion for the sniff. We thus reverse to suppress the discovered evidence.[1]

We review a trial court's denial of a motion to suppress to determine if substantial evidence supports the challenged findings of fact and whether those findings support the conclusions of law. State v. Campbell, 166 Wn. App. 464, 469, 272 P.3d 859 (2011). "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'" State v. Z.U.E., 178 Wn. App. 769, 778, 315 P.3d 1158 (2014) (quoting State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009)). Unchallenged findings of fact are verities on appeal. Campbell, 166 Wn. App. at 469. We review de novo the trial court's legal conclusions resulting from a suppression hearing. Id.

"The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution generally prohibit searches and seizures absent a warrant or a recognized exception to the warrant requirement." State v. Hendricks, 4 Wn. App. 2d 135, 141, 420 P.3d 726 (2018). The State bears the burden of establishing by clear and convincing evidence that an exception applies. Garvin, 166 Wn.2d at 250. Courts must suppress evidence seized in an unconstitutional search. State v. Monaghan, 165 Wn. App. 782,

---

[1] Because of our conclusion, we do not reach Shellabarger's other assignments of error.

789, 266 P.3d 222 (2012). If a trial error is of a constitutional magnitude, we presume prejudice and the State bears the burden of proving the error was harmless beyond a reasonable doubt. City of Vancouver v. Kaufman, 10 Wn. App. 2d 747, 754, 450 P.3d 196 (2019).

A warrantless traffic stop is constitutional "only if the officer had, from the beginning, a reasonable articulable suspicion that [an] infraction had occurred and the stop was reasonably related in scope to the circumstances that justified the interference in the first place." State v. Allen, 138 Wn. App. 463, 470, 157 P.3d 893 (2007).[2] Authority to conduct such a seizure "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez v. United States, 575 U.S. 348, 354, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). A dog sniff is not part of an officer's ordinary traffic mission. Id. at 356. Thus, absent reasonable suspicion, an officer may not prolong a traffic stop to conduct a dog sniff. Id. at 355.

In Illinois v. Caballes, an officer conducted a dog sniff of the defendant's car while another officer wrote the defendant a warning ticket. 543 U.S. 405, 406, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). The United States Supreme Court concluded that this did not violate the prohibition against unlawful searches and seizures. Id. at 408. However, the Court cautioned that "[a] seizure that is

---

[2] Analysis for whether such a stop is valid under article I, section 7 of our constitution "generally tracks the Fourth Amendment analysis," with the exception that such a stop "requires a reasonable suspicion connecting a particular person to a particular crime rather than a general suspicion that someone is up to no good." State v. Lee, 7 Wn. App. 2d 692, 701–02 n.27, 435 P.3d 847 (2019) (citing Z.U.E., 183 Wn.2d 610, 617, 352 P.3d 796 (2015)).

justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. at 407.

Here, the dog sniff began just as Shellabarger and Trooper Farkas finished discussing the details of the citation. The trial court determined that "[t]he length of detention for the entire stop was reasonable given all that was taking place from the time the vehicle was pulled over" and that "[t]he K9 search was reasonable since the processing of the citation had not been completed when the search began." But the question, under Rodriguez, is whether the dog search prolonged the detention, not whether the length of the entire stop was reasonable, or whether there was some overlap in time between the traffic stop and sniff. See 575 U.S. at 357, 135 S. Ct. 1609 (rejecting the Government's argument that it may incrementally prolong a stop to conduct a dog sniff if it is reasonably diligent in pursuing the traffic-related purpose of the stop and the overall duration of the stop remains reasonable). Trooper Farkas and Shellabarger discussed no further details of the citation after the dog sniff began.[3] Because the dog sniff continued past the time required for the traffic stop, the sniff prolonged the stop. The State has not carried its burden of showing otherwise.

Thus, we must next consider whether the troopers had reasonable suspicion to conduct a dog sniff, a question the trial court did not squarely reach

---

[3] And the fact that Trooper Farkas used a portable breath test on Shellabarger after stating that he did not plan to issue a DUI may elicit the inference that he did so to extend the traffic stop until the dog sniff began.

in its suppression order.[4]  "A suspicion is reasonable when it is based upon the 'substantial possibility that criminal conduct has occurred or is about to occur.'" State v. Johnson, 8 Wn. App. 2d 728, 746, 440 P.3d 1032 (2019) (quoting State v. Kennedy, 107 Wn.2d 1, 6, 726 P.2d 445 (1986)).  "A reasonable suspicion must 'be grounded in specific and articulable facts,'" and cannot be predicated upon speculation or mere hunches.  Johnson, 8 Wn. App. 2d at 746 (quoting Z.U.E., 183 Wn.2d 610, 617, 352 P.3d 796 (2015)).  And "[t]he available facts must substantiate more than a mere generalized suspicion that the person detained is 'up to no good'; the facts must connect the particular person to the *particular crime* that the officer seeks to investigate."  Z.U.E., 183 Wn.2d at 618 (quoting State v. Bliss, 153 Wn. App. 197, 204, 222 P.3d 107 (2009)).

The State says in its brief that Trooper Farkas had reasonable suspicion of DUI.  But at oral argument, the State conceded that no reasonable suspicion existed at the time Farkas issued Shellabarger a citation for speeding.  And prior to the dog sniff and after the field sobriety tests, Trooper Farkas said he did not plan to arrest Shellabarger for DUI.[5]  Farkas testified at the suppression hearing that after completing the field sobriety tests, he did not plan to arrest Shellabarger for DUI.[6]  And while, at the suppression hearing, Farkas testified

---

[4] The trial court concluded that "[t]he expansion of the stop beyond the investigation of the observed infractions was justified given Trooper Farkas's observations of impairment," but this conclusion does not comport with the requirements of the law on reasonable suspicion as discussed below.

[5] "His balance is bad, eyes aren't really dilated, blood shot yeah.  Not going to do [DUI] or anything."

[6] "After completing the field sobriety test, I could tell there was a consumption of foreign substance, however he wasn't impaired enough for me to arrest him for DUI."

that he had reasonable suspicion at the time he asked for a dog sniff, he was unable to articulate what crime he suspected at that moment. The State offers no explanation for what other crimes Trooper Farkas might have reasonably suspected. See Z.U.E., 183 Wn.2d at 618 ("[T]he facts must connect the particular person to the *particular crime* that the officer seeks to investigate.").

The State bears the burden of demonstrating that an exception to the prohibition against warrantless searches applies by clear and convincing evidence, and because it cannot show reasonable suspicion for the dog sniff, it fails to meet this burden.[7] Garvin, 166 Wn.2d at 250.

The trial court erred in denying Shellabarger's motion to suppress. The State does not argue that the error was harmless beyond a reasonable doubt. Nor do we see any basis for such an argument. We reverse to suppress the evidence found in the dog sniff.

_____
Chun, J.

WE CONCUR:

_____       _____
Andrus, A.C.J.                  Verellen, J.

---

[7] Shellabarger presents numerous arguments asserting that the State lacked reasonable suspicion for the dog sniff—namely, that his prior drug conviction, his lack of consent, and the Altoids tin cannot serve to establish reasonable suspicion. Although the State bears the burden of establishing an exception to the warrant requirement applies, it largely does not address these arguments. Instead, it appears to rely on the assertion that the dog sniff did not prolong the traffic stop.